FILED
CLERK
9/3/2019 3:10 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOHN SIMLEY,

      Plaintiff,     **MEMORANDUM OF
DECISION & ORDER**
   -against-       2:17-cv-4072 (ADS)

NANCY A. BERRYHILL, Acting
Commissioner, Social Security Administration,

      Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Law Office of Christopher James Bowes**
*Attorneys for the Plaintiff*
54 Cobblestone Drive
Shoreham, NY 11786
  By: Christopher James Bowes, Esq., Of Counsel.

**United States Attorneys Office, Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
  By: Dara A. Olds, Esq., Assistant United States Attorney.

**SPATT, District Judge**:

  On July 8, 2017, the Plaintiff John Simley (the "Plaintiff" or the "Claimant") commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant, Nancy A. Berryhill, the then Acting Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that he was ineligible to receive Social Security disability benefits.

  Andrew M. Saul is now the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P.") 25(d), Saul is hereby substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this action. *See,*

1

*e.g.*, *Pelaez v. Berryhill*, No. 12-CV-7796, 2017 WL 6389162 (S.D.N.Y. Dec. 14, 2017), *adopted by*, 2018 WL 318478 (S.D.N.Y. Jan. 3, 2018).

Presently before the Court are the parties' cross motions, pursuant to FED. R. CIV. P. 12(c) for a judgment on the pleadings. For the reasons that follow, the Plaintiff's motion is denied and the Defendant's motion is granted.

**I.    BACKGROUND**

On January 14, 2013, the Plaintiff applied for disability insurance benefits under the Act. He alleged that he had been disabled since April 30, 2012, because of lower back pain, a left wrist injury, and sleep apnea.

His claim was denied on April 11, 2013, and he requested a hearing. The Plaintiff appeared with counsel before Administrative Law Judge Bruce MacDougall on April 1, 2014. On May 3, 2014, ALJ MacDougall issued a written decision in which he found that the Plaintiff was not entitled to disability benefits under the Act.

The Plaintiff sought a review by the Appeals Council, and on May 27, 2015, the Appeals Council granted review and remanded the Plaintiff's case for a new decision. On October 27, 2015, the Plaintiff appeared with counsel before Administrative Law Judge Andrew Weiss. On January 28, 2016, ALJ Weiss issued a written decision finding that the Plaintiff retained the capacity to perform a partial range of light work. The Plaintiff sought a review by the Appeals Council, which denied his request on May 4, 2017. ALJ Weiss's decision became the final decision of the Commissioner upon the Appeals Council's denial of the Plaintiff's request for review.

On July 8, 2017, the Plaintiff filed the present action. On October 15, 2018, the parties submitted the matter as fully briefed to the Court.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

### A. The Standard for Benefits Under the Act

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 404.1520. *See Rosa v Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Plaintiff bears the burden of proving the first four steps, but then the burden shifts to the Commissioner at the fifth step to prove that the Plaintiff is capable of working. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa*, 168 F.3d at 77. *See also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or non-disability can be made, the [Social Security Administration] will not review the

claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L. Ed. 2d 333 (2003).

Under the five-step sequential evaluation process, the decision-maker decides:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920. When conducting this analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, as well as the plaintiff's age, background, education and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

### B. The Standard of Review

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, *J.*) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179–71 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 405(g). *See also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district

4

court to make a determination regarding the existence of substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case *de novo*." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.* (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [plaintiff's] view;" instead, the Court "must decide whether substantial evidence supports *the ALJ's decision*," *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (Summary Order) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would *have to conclude otherwise.*'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-CV-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127–28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also

include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L. Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (per curiam) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might understandably have reached a different result upon a *de novo* review. *See Koffsky*, 26 F. Supp. 2d at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

C. **The Rule 12(c) Standard**

Both parties filed Rule 12(c) motions. ECF 18, 20. Such motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *See Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "To survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Hayden v. Peterson*, 594 F.3d 150, 160 (2d Cir. 2010). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). "'Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009).

### D. Application to the Facts of This Case

The Plaintiff asks in his Rule 12(c) motion for the Court to reverse the final administrative decision in his action and remand it for additional proceedings. ECF 19. First, the Plaintiff raises arguments about his treating physician, Dr. Mitchell Goldstein, who treated the Plaintiff from January 2013 to September 2015. *Id,* at 7–14. The Plaintiff argues that Dr. Goldstein's multiple opinions in the case should have been given controlling weight. For example, he issued an opinion in October 2015 that alleged, inter alia, that: (a) the Plaintiff could stand and walk for fewer than two hours of an eight-hour workday and that he was limited to the occasional use of his right and left upper extremities for reaching, handling, and fingering; and (b) these limitations would preclude the Plaintiff from doing light work, which requires six hours of standing and walking throughout an eight hour workday, or sedentary work, which requires six hours of siting throughout an eight hour work day. *Id.* at 19 (citing R. at 504–05). This opinion was well-supported by medical evidence and the findings of other physicians. *Id.* at 19–20. Despite this, the Plaintiff argues, ALJ Weiss "erroneously" provided his own opinion that the Plaintiff could perform light work. *Id.* at 20. In doing so, he both disregarded the evidence in the record and also failed to consider that the Plaintiff is obese. *Id.* at 20–21.

Second, the Plaintiff argues that the Commissioner failed to demonstrate that there are a significant number of jobs at Step Five. *Id.* at 22–25. He contends that the testimony of the vocational expert Amy Peiser Leopold ("VE Leopold") did not match the facts of the case, because two of the three jobs proposed by the expert (dispatcher and gate guard) are semi-skilled jobs, and the ALJ ruled that the Plaintiff had no transferable skills. *Id.* at 24–25. As to the other

job, an office assistant, that job requires an individual to perform light work. *Id.* at 25. This position would also be inappropriate for the Plaintiff, because as noted above, he lacks the capacity to perform light work, and in any event, there aren't enough jobs available for the Plaintiff. *Id.*

In opposition, and in support of its Rule 12(c) cross-motion, the Defendant argues that: (a) ALJ Weiss properly gave Dr. Goldstein's opinions significant, but not controlling weight, because those opinions were not supported by the clinical findings of record; (b) the Plaintiff never identified obesity as a limiting condition in his application procedures, and presented no evidence that obesity had reduced his functional abilities; and (c) ALJ Weiss properly relied on VE Leopold's testimony, because one of the three proposed jobs, office helper, is an unskilled position that is available in the national economy in significant numbers. ECF 21 at 20–25. The Court addresses each of these arguments in turn.

### a. As to Whether the ALJ's Finding Residual Functional Capacity Was Supported by Substantial Evidence

Under the treating physician rule, the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments is given "controlling weight" so long as it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue,* No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same). Although the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567–68 (2d Cir. 1993), those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts, *Burgess*, 537 F.3d at 128. The ALJ must consider the following factors if it

decides to afford less than controlling weight to the treating physician's opinion: "(1) the frequen[c]y, length, nature, and extent of the treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that "genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (Summary Order); *see also Garcia v. Barnhart*, No. 01-CV-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003) (holding that the ALJ cannot substitute his or her "own assessment of the relative merits of the objective evidence and subjective complaints for that of a treating physician").

ALJ Weiss gave "significant, but not great or controlling weight" to Dr. Goldstein's opinions, as follows:

> These opinions are not fully supported by clinical findings, which show, *inter alia*, only minimally reduced ranges of motion and no motor weakness or reflex abnormalities. Diagnostic findings, likewise, do not reflect the degree of limitation claimed. The medical evidence confirms that the claimant has severe impairments but show that surgeries were successful; his medical record is consistent with the conclusion that he has significant limitations but not to the extent alleged. For instance, the treatment records do not support existence of a right upper extremity impairment or indicate a mental impairment or reflect environmental restrictions. Therefore, although Dr. [Goldstein's] assertions have probative value, it is limited.

R. at 27.

The Court agrees with the Defendant's arguments. Dr. Goldstein's reports reveal several inconsistencies concerning his functional capacity. He recorded the Plaintiff as having an antalgic gait, or a limp adopted to avoid pain, during his first two examinations of the Plaintiff, in January 2013. R. at 398–99, 404; *see Myers v. Berryhill*, No. 16-CV-4567, 2018 WL 1459451,

at *3 n.6 (defining antalgic gait). However, an examination from March 14, 2013 revealed a normal gait. R. at 392. Dr. Goldstein wrote a letter two weeks later in which he only referred to the Plaintiff as having an antalgic gait. *Id.* at 443–44. Every subsequent examination of the Plaintiff also resulted in a normal gait. *Id.* at 380, 389, 460, 464, 479, 483, 487, 495, 499. Thus, these results undercut Dr. Goldstein's October 2015 opinion that the Plaintiff could not walk for prolonged periods. In addition, of importance, the examinations revealed no evidence of motor loss in the Plaintiff's upper left or upper right extremities. *See, e.g.*, *id.* at 379, 382, 389, 404.

The Plaintiffs argument that Dr. Goldstein's opinions are supported by the findings of other physicians is unpersuasive. First, he refers to the findings of a Dr. Eric. Price, who provided treatment in December 2012. *Id.* at 362–63. Not only do these findings predate the Plaintiff's gait improvement, but they do not comment on his gait or use of his upper left extremity. Second, the Plaintiff references the findings of the Medical Board Police Pension Fund from February 2012, which summarized a series of medical examinations and concluded that he lacked the left wrist range of motion and grip necessary to work as a police officer. *Id.* at 347–51. However, the medical examinations themselves do not appear in the record, and thus, the Court cannot consider them. *See Duran v. Barnhart*, No. 01-CV-8307, 2003 WL 103003, at *8 ("[T]he appeal of a Social Security matter must be decided based on the administrative record.") (citing *Casiano v. Apfel*, 39 F. Supp. 2d 326, 330–31 (S.D.N.Y. 1999)); *see also Horn v. Comm'r of Soc. Sec.*, No. 13-CV-1218, 2015 WL 4743933, at *18 (E.D.N.Y. 2015). Third, he cites the findings of a Social Security Administration-requested consultative examination, R. at 336–38, but that examination only states that the Plaintiff is "restricted" with regard to sitting standing and walking, without stating the degree to which the Plaintiff is so limited. *See Amons*

*v. Astrue*, 617 F. Supp. 2d 173, 176 (W.D.N.Y. 2009) (observing that moderate restrictions in walking and standing are consistent with light work).

### b. As to Whether ALJ Weiss Should Have Considered the Plaintiff's Obesity

The Plaintiff argues that ALJ Weiss "also neglected to consider [his] morbid or extreme obesity," in spite of Dr. Goldstein and the consultative expert's acknowledging that he is obese. ECF 19 at 21–22. The Defendant argues that the Plaintiff neither identified obesity as a limited condition nor identified any evidence in the record showing that obesity limited his functional abilities. ECF 21 at 23–24. The Court agrees.

While an ALJ should consider whether obesity, along with other impairments, prevents a claimant from working, the "ALJ's failure to explicitly address a claimant's obesity does not warrant remand. . . . When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions." *Guadalupe v. Barnhart*, No. 04-CV-7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552–53 (3d Cir. 2005); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)). In addition, a party must furnish evidence that obesity limits his ability to work. *See Britt v. Astrue*, 486 F. App'x 161, 163 (2d Cir. 2012) (Summary Order).

Here, the record contains evidence of the Plaintiff's obesity from both the consultative physician and Dr. Goldstein. *See, e.g.*, R. at 338, 436–37. ALJ Weiss's decision noted the Plaintiff's obesity as well. *Id.* at 29. Though he ultimately ruled that the Plaintiff was not disabled, he did rule that the Plaintiff was limited to performing light work; thus, he did adopt in part the physical limitations suggested by the reviewing doctors. *See Guadalupe*, 2005 WL 2033380, at *6. In any event, the Plaintiff never claimed during administrative proceedings that

his obesity limited his ability to work; thus, any claim that obesity was a factor now lacks merit. *See Britt*, 486 F. App'x at 163; *see also Rockwood v. Astrue*, 614 F. Supp. 2d 252, 276–77 (N.D.N.Y. 2009).

### c. As to Whether ALJ Weiss Properly Relied on VE Leopold's Testimony

The Plaintiff argues that the Commissioner has failed to demonstrate that there are a significant number of jobs at Step Five. ECF 19 at 22–23. The Plaintiff argues that ALJ Weiss determined that the Plaintiff cold perform light work, but two of VE Leopold's three listed jobs are designated as semi-skilled. *Id.* at 23–24. The Defendant does not dispute this fact, but argues nonetheless that the third job that VE Leopold identified, office helper, is an unskilled job that represents a significant number of jobs in the national economy; 117,000. ECF 21 at 24–25. The Court finds that the Defendant has met its Step Five burden.

At Step Five, "the Commissioner need only show *one job* existing in the *national economy* that [claimaint] can perform." *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (Summary Order) (emphases added). As to the number of positions available for that one job, courts in this Circuit have ruled that the quantity required for a "'significant number'" of jobs is "'very minimal.'" *See Rodriguez v. Berryhill*, No. 16-CV-1010, 2018 WL 704136, at *5 (D. Conn. Feb. 5, 2018) (ruling that 25,000 jobs constituted a significant number) (quoting *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229 (N.D.N.Y. 2015) (ruling that three positions containing 5,160 national jobs was not significant)).

The Court acknowledges the parties' agreement that two of VE Leopold's three proposed jobs do not meet the criteria set out by ALJ Weiss. Therefore, it only considers the third proposed job, office helper. That VE Leopold provided only one viable job is not a basis for remand. *Bavaro*, 413 F. App'x at 384; *see also Barnaby v. Berryhill*, 773 F. App'x 642, 644 (2d

Cir. 2019) (Summary Order) ("[T]he Commissioner's burden is to identify . . . one job existing in significant numbers in the national economy."). That one job, office helper, has 117,000 positions available in the national economy, making it a significant number. *See Rodriguez*, 2018 WL 704136, at *5 (deeming 25,000 jobs a significant number). Thus, the Court finds that the ALJ conducted the proper analysis at step five, and that VE Leopold provided reliable testimony.

### III. CONCLUSION

For the foregoing reasons, the Court denies the Plaintiff's Rule 12(c) motion, grants the Defendant's Rule 12(c) cross-motion, and dismisses the complaint.

The Clerk of Court is respectfully directed to close the case.


It is **SO ORDERED.**


_____/s/ Artur D. Spatt_____            \_\_\_\_September 3, 2019\_\_\_\_

Arthur D. Spatt, U.S.D.J.                                            Date